**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CAO GROUP, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HISMILE PTY LTD.,**<br><br>**Defendant.** | **Case No.**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff CAO Group, Inc. ("Plaintiff" or "CAO") hereby brings the present action against Defendant HiSmile Pty Ltd ("Defendant" or "HiSmile"), an Australian company, for damages for infringement of U.S. Patent No. 11,826,444, and alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 *et seq.*, 28 U.S.C. § 1338(a)-(b) (exclusive patent claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c)(3) because Defendant is a foreign entity organized under the laws of Australia, and, under 28 U.S.C. § 1391(c)(3), a defendant not resident in the United States may be sued in any judicial district. Venue is further proper under 28 U.S.C. § 1400(b) because Defendant committed acts of infringement in this District by selling the accused products through retail stores located in this District, including at least Marshalls stores, and by selling and shipping the accused products directly to purchasers in this District through its Amazon.com storefront, during the term of the Patent-in-Suit.

3. This Court may properly exercise personal jurisdiction over Defendant because

Defendant structured its business activities so as to target consumers in the United States, including Illinois. Specifically, during the term of the Patent-in-Suit, Defendant targeted sales to Illinois residents by manufacturing, importing, and distributing accused products for sale in retail stores throughout the United States, including Illinois, accepting payment in U.S. dollars, and selling products that infringed Plaintiff's patented inventions, as described below (collectively, the "Accused Products"), to residents of Illinois. Defendant committed tortious acts in Illinois, engaged in interstate commerce, and wrongfully caused Plaintiff substantial injury in the State of Illinois. For example, on August 30, 2024, Defendant, through its Amazon.com storefront (identified as "Sold by: Hismile"), sold an Accused Product and caused it to be shipped to a purchaser in Vernon Hills, Illinois, within this District. (*See* **Exhibit D**.)

4. In the alternative, this Court may exercise personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k)(2) because Plaintiff's claims arise under federal law; on information and belief, Defendant is not subject to the jurisdiction of the courts of general jurisdiction of any state; and exercising jurisdiction over Defendant is consistent with the United States Constitution and laws in light of Defendant's contacts with the United States as a whole, including its nationwide retail distribution, its Amazon.com storefront, and its U.S.-facing website.

## INTRODUCTION

5. Plaintiff brings this action to recover damages for Defendant's past infringement of Plaintiff's patented inventions. During the term of the Patent-in-Suit, Defendant, a foreign manufacturer and distributor, infringed Plaintiff's patented inventions by selling accused products in the United States. Defendant manufactured and distributed teeth whitening strip products that incorporated the patented inventions claimed in Plaintiff's Patent and sold these products to United States consumers through retail stores throughout the country, including in this District, and

through online channels, without authorization from Plaintiff and in violation of Plaintiff's exclusive patent rights. Plaintiff seeks to recover monetary damages for the period during which Defendant infringed the Patent-in-Suit.

**THE PARTIES**

6. Plaintiff, CAO Group, Inc., is a Utah corporation with its principal place of business at 4628 West Skyhawk Drive, West Jordan, Utah 84084, and was the owner of the Patent-in-Suit during its term.

7. On information and belief, Defendant HiSmile Pty Ltd is an Australian company that manufactures teeth whitening products and distributed them for sale in the United States through retail and online channels during the term of the Patent-in-Suit. Defendant's products bear markings identifying "Hismile Pty Ltd" as the manufacturer and list an address at 225 Burleigh Connection Rd., Burleigh Waters QLD 4220, Australia.

**PLAINTIFF'S ASSERTED PATENT**

8. Plaintiff was the owner of all right, title, and interest in U.S. Patent No. 11,826,444 B2 ("the '444 Patent," "Plaintiff's Patent," "the Patent-in-Suit," or the "Asserted Patent") during its term. A true and correct copy of the '444 Patent is attached hereto as **Exhibit A**.

9. The '444 Patent is titled "Peroxide Gel Compositions" and was duly and legally issued by the United States Patent and Trademark Office on November 28, 2023, from U.S. Patent Application No. 17/659,473, filed April 15, 2022. The '444 Patent claimed priority, through a chain of continuation and continuation-in-part applications, to U.S. Patent Application No. 11/307,463, filed February 8, 2006. The '444 Patent expired on or about February 8, 2026.

10. Mr. Steven D. Jensen, a CAO chemist, and Dr. Densen Cao are the named co-inventors of Plaintiff's Patent. Mr. Jensen worked with CAO for more than fifteen years, during

which time he served and continues to serve as a prolific inventor, including of more than sixty CAO U.S. patents and published applications. As a chemist at CAO, Mr. Jensen contributed numerous innovations, including advanced teeth whitening strips, root canal disinfection, reversible cement, disinfection products, and many others. Prior to joining CAO, Mr. Jensen worked as a chemist for several years at Ultradent, a global dental manufacturing company, during which time he contributed to the development of many products, including whitening, pit and fissure sealants, pulp capping agents, luting cement, bonding agents, and caries detection technologies. Mr. Jensen has also lectured nationally on the topic of oral healthcare science and technology.

11. Dr. Densen Cao was the other named inventor on Plaintiff's Patent and is the founder and CEO of CAO.

12. Plaintiff's Patent generally described formable dental whitening devices, such as whitening strips, in which a gelatinous, visco-elastic composition containing an active whitening ingredient is carried on a flexible backing, so that the device can be pressed and formed around a user's dental arch without cracking or breaking. ('444 Patent, Abstract; 5:43–53; 8:10–30.)

13. Plaintiff's Patent disclosed several problems with prior art dental bleaching approaches. For example, the prior art dental trays that used fluids or high-viscosity fluidic gels were very difficult to make and design so that they fit all users and contact teeth evenly due to variations in teeth anatomy. The prior art dental trays were also cumbersome and painful to use. In addition, fluids or high-viscosity fluidic gels used in prior art dental trays or dental strips were messy, would not remain in or on dental trays and strips, were not sufficiently adhesive to remain on the teeth, and various prior art strips failed to contact uneven teeth, resulting in gaps that would allow saliva to enter and dilute and/or wash away whitening gel. ('444 Patent, 2:29–3:54.)

14. Plaintiff's Patent further disclosed that more rigid or solidified prior art compositions either involved two-part treatments that required combination immediately prior to use, which could be messy and inconvenient, and could not be stored as pre-mixed shelf-stable compositions because they would decompose into a dry powder and degraded peroxide, and/or would crack or break when flexed. (*Id.* at 3:55–4:24.)

15. Plaintiff's Patent disclosed improved bleaching devices that use compositions with thickening agents that include at least poly(2-ethyl-2-oxazoline) or polyvinylpyrrolidone ("PVP") in a manner that allows higher concentrations of peroxide bleaching agent to be used, in a highly viscous composition that can be stored at room temperature for six months. (*Id.* at 6:35–50; 10:9–13.)

16. The specification also made clear that the invention is not limited to any particular whitening agent, explaining that "other active ingredients may be added to the composition for more desired effects, with or without peroxide." (*Id.* at 10:3–5.)

17. Plaintiff's Patent further disclosed that:

[T]he gels form a bleaching compound that will conform to a user's dental arches and form a bleaching tray 10 without cracking or breaking (FIG. 3). The resultant compound is visco-elastic, and gelatinous, having a flexibility and consistency similar to the popular confection known as gummi worms, and will deform when removed from the backing material. The resultant tray is initially planar; with a significant body of gelatinous whitening composition adhered to the backing. ('444 Patent, 8:22–30.)

18. Plaintiff's Patent also disclosed:

For purposes of this Application, the term "gelatinous" shall have the definition given first in the American Heritage Dictionary of the English Language, Fourth Edition, ©2006 by

Houghton Mifflin Co.: "resembling gelatin, viscous." A gelatinous compound shall be a visco-elastic compound having physical deformation properties between a solid and a fluid. A solid shall be defined as a substance that is sufficiently rigid so that it maintains its form indefinitely, independent of any structure or support. A fluid shall be defined as a substance that will conform and coalesce to the shape of a beaker into which multiple samples of the same substance are placed, within 10 minutes, with hand agitation of the container and/or hand mixing with an implement at 25° C. with an atmospheric pressure of 1 ATM. Therefore, a gelatinous compound, as the term is used in this Application, will have some degree of flex and deformation as required to fit inside a container, but will not coalesce so that a specific sample or portions thereof are still determinable. This is particularly evident if a number of discrete units of gelatinous material are placed in a container—they will bend as they contact the container but will not merge into one body. ('444 Patent, 5:54–6:8.)

19. The Patent-in-Suit did not limit the whitening agent to hydrogen peroxide. The specification identified hydrogen peroxide, carbamide peroxide, sodium percarbonate, and sodium perborate as "examples" of peroxides ('444 Patent, 1:32–36), and expressly contemplated compositions using other active ingredients "with or without peroxide" (*id.* at 10:3–5). Consistent with that disclosure, independent claims 1 and 3 of the '444 Patent require only "a tooth whitening agent," while dependent claim 5 separately requires "the tooth whitening agent being a peroxide."

20. By virtue of the USPTO's issuance of Plaintiff's Patent, each claim of the Asserted Patent was inventive, novel, non-obvious, and innovative over at least the disclosures in the prosecution history, and the patent was valid and enforceable during its term. The Asserted Patent is presumed valid under 35 U.S.C. § 282.

21. Claim 1 of the '444 Patent recites:

> 1. A dental whitening device, comprising:
>
> a strip of backing material, wherein the strip of backing material is flexible and planar such that the strip of backing material has two flat sides;
> a gelatinous, non-coalescent, visco-elastic dental composition conjoined to at least a portion of one of the flat sides of the strip of backing material, the dental composition being comprised of a tooth whitening agent, a solvent, and a thickening agent selected from the set of thickening agents consisting of polyethyloxazoline and polyvinylpyrrolidone (PVP);
> wherein when adhered to a user's dental arch both the dental composition and the backing material flex and conform to the user's dental arch without cracking or breaking.

22. Independent claim 3 of the '444 Patent similarly recites a dental whitening composition comprising a tooth whitening agent and a thickening agent selected from the set of thickening agents consisting of polyethyloxazoline and PVP, "wherein the dental whitening composition is a gelatinous, non-coalescent, and visco-elastic substance in the shape of a planar strip such that when removed from a package the strip may be applied directly to a user's teeth in a manner that conforms to that individual user's dental arch as the dental composition flexes and conforms to the user's dental arch without cracking or breaking." Dependent claim 5 adds "the tooth whitening agent being a peroxide." A claim chart is attached as **Exhibit B**.

23. Plaintiff was founded by Dr. Densen Cao, PhD, in Salt Lake County, Utah, in 2000, following Dr. Cao's completion of Ph.D. studies in Materials Science and Engineering from the University of Utah. Before founding CAO, Dr. Cao also served as coordinator of material science at Clinical Research Associates, where he examined dental materials, such as glass ionomers and their fluoride release, the properties of composites and adhesives, and dental equipment, and serving as a staff engineer at Fairchild Semiconductor.

24. Over the course of years of research and development, CAO invented and patented ground-breaking advancements in the dental, oral health, and LED lighting fields, among others.

CAO has publicly disclosed its novel inventions in more than 192 issued patents and/or published patent applications world-wide.

25. For example, Dr. Cao invented LED curing light technology for use in dental applications, which nearly all major dental manufacturers have licensed. Dr. Cao also invented LED light sources for general lighting purposes which have been widely adopted by nearly all providers in the lighting field.

26. In 2006, CAO moved into a 60,000 square-foot facility in West Jordan, Utah, which houses its Research and Development, Engineering, Manufacturing, Global Logistics, Customer Support, Marketing and Sales teams.

27. CAO created advanced dental strip technologies to deliver various medications and other ingredients, including improved professional whitening products. These improved dental whitening strips contained chemical compositions that permitted higher concentrations of active whitening agents with an improved fit to conform to teeth, which thus delivered faster and improved results in a shorter time as compared with previously-existing technology. CAO's efforts in this field resulted in the United States Patent and Trademark Office ("USPTO") granting CAO numerous patents related to such technologies, including the '444 Patent asserted here.

28. In 2010, CAO launched its Sheer White!® Teeth Whitening Strips product for dental patients' in-home use. CAO advertised that, while wearing this product, due to the patented non-slip formula, the user "can talk, drink [cool beverages], work out, and get on with their day."

29. That same year, CAO entered into an exclusive relationship with Henry Schein, the world's largest distributor of professional dental equipment and supplies, to distribute CAO's core dental products, including Sheer White!® Whitening Strips.

30. On information and belief, during the term of the Patent-in-Suit, CAO's Sheer

White!® Whitening Strips became the top selling teeth whitening product within the Henry Schein distribution channel.

31. During the term of the Patent-in-Suit, CAO's Sheer White!® Whitening Strips were marked with the Patent-in-Suit. Plaintiff listed the Asserted Patent on the packaging of all of Plaintiff's Products and displayed the URL to Plaintiff's website (https://caogroup.com/pages/patents), where Plaintiff displayed a list of its products and which patents those products embodied.

**DEFENDANT'S PAST INFRINGEMENT**

32. During the term of the Patent-in-Suit, Defendant infringed Plaintiff's Patent by manufacturing, importing, and selling teeth whitening strip products that incorporated the patented inventions.

33. During the period of infringement, Plaintiff identified Defendant's infringing teeth whitening strip products being sold in retail stores throughout the United States, including in this District. The accused products included, without limitation: "PAP+ Strips" (14 applications, 28 strips) (the "Accused Products"). True and correct copies of photographs showing the Accused Products and their ingredient listings as sold in retail stores are attached as **Exhibit C**.

34. During the period of infringement, the Accused Products were sold throughout the United States in major retail chains, including Marshalls stores in this District. The products were priced in U.S. dollars (for example, $9.99 at Marshalls with a compare-at price of $14.00) and were readily available to consumers throughout the United States, including Illinois residents.

35. During the term of the Patent-in-Suit, Defendant targeted consumers throughout the United States by manufacturing and distributing the Accused Products for sale in retail stores across the country, accepting payment in U.S. dollars, and selling and/or offering for sale the

Accused Products to residents of every state, including Illinois.

36. Defendant also sold the Accused Products directly to consumers in this District through online channels. For example, on August 30, 2024, during the term of the Patent-in-Suit, Defendant, through an Amazon.com storefront identified as "Sold by: Hismile," sold a "Hismile Teeth Whitening Strips for Sensitive Teeth, Peroxide Free, Dental White Strips Kit, 28 Strips, 14 Treatments" for $19.50 and caused it to be shipped to a purchaser in Vernon Hills, Illinois, within this District. A true and correct copy of the order record, with personal and payment information redacted, is attached as **Exhibit D**.

37. Defendant also operates the website www.hismileteeth.com, which is identified on the packaging of the Accused Products and which offers the PAP+ Strips to consumers in the United States with a "United States" region setting, prices in U.S. dollars (currently "US $29"), and installment payment through Afterpay. On information and belief, Defendant offered the Accused Products for sale to U.S. consumers through its website throughout the term of the Patent-in-Suit. True and correct copies of printouts of Defendant's PAP+ Strips product page are attached as **Exhibit E**.

38. The packaging of the Accused Products identified the manufacturer as "Hismile Pty Ltd" with an Australian address at "225 Burleigh Connection Rd., Burleigh Waters QLD 4220, Australia." The products bore copyright notices indicating "© Hismile Pty Ltd, 2022" and website references to "www.hismileteeth.com." The packaging further stated that the products were "Formulated in Australia" and "Made in China," indicating that during the period of infringement, the Accused Products were manufactured outside the United States and imported into the United States for sale to consumers.

39. The ingredient lists printed on the Accused Products' retail packaging explicitly

disclosed the composition of Defendant's infringing dental compositions. As set forth in detail in **Exhibit C**, the PAP+ Strips contained the following ingredients: "Glycerin, Water/Aqua, PVP, Ethylcellulose, Alcohol, Sodium Polyacrylate, Phthalimidoperoxycaproic Acid (PAP), Xylitol, Potassium Citrate, Hydroxyapatite, Rebaudioside A, Menthol, Sodium Citrate, Xanthan Gum, PVM/MA Copolymer, C12-15 Pareth-3." The same ingredient list appears on the single-application sachets packaged within each box and on the PAP+ Strips product page of Defendant's website.

40. The packaging of the PAP+ Strips describes them as "[c]onvenient, mess-free teeth whitening strips designed to gently lift stains for a whiter smile," states that each box "[c]ontains: 28 strips (14 upper/14 lower)," and instructs the user to "[p]eel off the long strip and apply sticky side to top teeth. Press strip down firmly and fold over back of teeth to secure. Repeat for short strip on bottom teeth. Allow 30 minutes for whitening treatment. Remove strips." (**Exhibit C**.)

41. Defendant's website likewise describes PAP as "[a] scientifically proven teeth whitening ingredient," explains that "[w]hen applied to your teeth, each strip firmly adheres to the tooth surface and releases the active ingredients of the PAP+ formula into the tooth's structure to whiten the tooth," states that "[w]hen PAP+ whitens, it oxidises tooth stains," and instructs users to "[f]irmly apply a strip to both your upper & lower teeth" and, "[a]fter 30 minutes, gently remove both strips from your teeth." (**Exhibit E**.)

42. On information and belief, the formulation of the Accused Products did not change in any material respect during the term of the Patent-in-Suit. The ingredient list on the Accused Product packaging bearing a "© Hismile Pty Ltd, 2022" notice is identical to the ingredient list on Defendant's current website.

43. Plaintiff never licensed or authorized Defendant to use Plaintiff's Patent, and

Defendant was not an authorized retailer of Plaintiff's Products.

44. During the term of the Patent-in-Suit, Defendant knowingly and willfully manufactured, imported, distributed, offered for sale, and/or sold the Accused Products into the United States, including Illinois. Defendant, without any authorization or license from Plaintiff, knowingly and willfully infringed Plaintiff's Patent in connection with the manufacture of the Accused Products and the distribution, offering for sale, and sale of the Accused Products into the United States and Illinois through retail channels.

45. On information and belief, Defendant knew of the '444 Patent, or deliberately avoided learning of it, no later than its issuance on November 28, 2023. Despite this knowledge, Defendant continued to manufacture, import, distribute, offer for sale, and sell the Accused Products in the United States through retail and online channels, including, for example, the August 30, 2024 sale into this District described above.

46. Defendant's continued infringement after the '444 Patent issued demonstrates that Defendant's infringement was knowing, intentional, and willful. Defendant chose to disregard Plaintiff's patent rights and continued its infringing activities despite its knowledge of the '444 Patent.

47. On information and belief, during the period of infringement, Defendant offered to sell and knowingly sold the Accused Products with knowledge of Plaintiff's Patent or with such disregard of an objectively high likelihood that its actions constituted infringement of a valid patent that the failure to investigate cannot be characterized as innocent.

48. Defendant's unauthorized use and/or manufacturing of the inventions claimed in Plaintiff's Patent in connection with the distribution, offering for sale, and sale of the Accused Products during the term of the Patent-in-Suit caused Plaintiff loss of market share, erosion of

Plaintiff's patent rights, and other monetary damages for which Plaintiff seeks compensation.

**COUNT I**
**PATENT INFRINGEMENT DAMAGES (35 U.S.C. § 271) – U.S. PATENT NO. 11,826,444**

49. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

50. Plaintiff was the owner of all right, title, and interest in the '444 Patent during its term, including the right to sue for and recover damages for infringement.

51. During the term of the '444 Patent, Defendant, without any authorization or license from Plaintiff, knowingly and willfully made, used, offered for sale, sold, and/or imported into the United States for subsequent resale or use the Accused Products, which infringed directly and/or indirectly one or more claims of the '444 Patent, including at least Claims 1, 3, and 5, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a).

52. As shown in the claim chart attached as **Exhibit B**, the Accused Products, including without limitation the "PAP+ Strips," infringed at least Claim 1 of the '444 Patent during its term. The claim chart of **Exhibit B** is illustrative only and is made without the benefit of discovery or claim construction, and Plaintiff reserves the right to modify its infringement theory as appropriate as the case proceeds. Although the claim chart focuses on Claim 1, Plaintiff alleges that Defendant infringed additional claims of the '444 Patent during its term.

53. Each Accused Product is, to the extent the preamble is limiting, "[a] dental whitening device." Defendant markets and sells the Accused Products as "teeth whitening strips" that are "designed to gently lift stains for a whiter smile." (**Exhibit C**.)

54. "*a strip of backing material, wherein the strip of backing material is flexible and planar such that the strip of backing material has two flat sides*" – Each Accused Product includes upper and lower strips, each of which consists of a thin, flat, flexible film backing that carries the

whitening composition on one of its two flat sides. Defendant instructs users to "[p]eel off the long strip and apply sticky side to top teeth," to "[p]ress strip down firmly and fold over back of teeth to secure," and to "[r]epeat for short strip on bottom teeth." (**Exhibit C**.)

55. "*a gelatinous, non-coalescent, visco-elastic dental composition conjoined to at least a portion of one of the flat sides of the strip of backing material*" – Each Accused Product includes a dental composition adhered to one flat side of the backing strip, the "sticky side" that the user applies to the teeth. On information and belief, that dental composition is gelatinous, non-coalescent, and visco-elastic as those terms are used in the '444 Patent, *i.e.*, it has physical deformation properties between those of a solid and a fluid. The composition is not a fluid: it remains on the strip in a discrete form rather than flowing or coalescing; and Defendant markets the strips as "mess-free." Nor is the composition a rigid solid: it is sufficiently flexible and deformable that the user can "[p]ress strip down firmly and fold over back of teeth to secure" it, after which it "firmly adheres to the tooth surface" for a 30-minute treatment and is then "gently remove[d]."

56. "*the dental composition being comprised of a tooth whitening agent, a solvent, and a thickening agent selected from the set of thickening agents consisting of polyethyloxazoline and polyvinylpyrrolidone (PVP)*" – As disclosed on the packaging of the Accused Products, the dental composition contains (i) "Phthalimidoperoxycaproic Acid (PAP)," which Defendant itself describes as "[a] scientifically proven teeth whitening ingredient" that "oxidises tooth stains" (a tooth whitening agent); (ii) "Water/Aqua," as well as glycerin and alcohol (a solvent); and (iii) "PVP," *i.e.*, polyvinylpyrrolidone, which is one of the two thickening agents recited in the claim.

57. "*wherein when adhered to a user's dental arch both the dental composition and the backing material flex and conform to the user's dental arch without cracking or breaking*" –

Defendant instructs users to apply the strip, "sticky side" against the teeth, "[p]ress strip down firmly and fold over back of teeth to secure," leave it in place for 30 minutes, and then "gently remove both strips." The Accused Products could not be used as instructed, folded over the biting edges and pressed against the curved surfaces of adjacent teeth, unless both the dental composition and the backing material flexed and conformed to the user's dental arch without cracking or breaking. On information and belief, they did so.

58. Although claims 1 and 3 require only "a tooth whitening agent," PAP is also a peroxide. Phthalimidoperoxycaproic acid is an organic peroxy acid: as the "peroxy" in its name indicates, it contains a peroxide group, *i.e.*, two oxygen atoms joined by a single covalent bond, and it whitens teeth by oxidizing stains through that group. Defendant's marketing of the Accused Products as "[h]ydrogen peroxide free" and "Peroxide Free" reflects only that the Accused Products do not use hydrogen peroxide or carbamide peroxide as the whitening agent; it does not change PAP's chemical structure or function.

59. For the same reasons, the Accused Products also met each limitation of independent claim 3 of the '444 Patent. The dental composition of each Accused Product comprised a tooth whitening agent (PAP) and a thickening agent selected from the recited set (PVP), and was a gelatinous, non-coalescent, and visco-elastic substance in the shape of a planar strip that, when removed from its package, could be applied directly to a user's teeth in a manner that conformed to that user's dental arch as the composition flexed and conformed without cracking or breaking. Because PAP is a peroxide, the Accused Products also met dependent claim 5.

60. The Accused Products therefore met each limitation of at least claims 1, 3, and 5 of the '444 Patent, literally or, in the alternative, under the doctrine of equivalents. Plaintiff reserves the right to identify additional asserted claims in its infringement contentions under the Local

Patent Rules of this District.

61. During the period of infringement, Defendant profited by its infringement of the '444 Patent, and Plaintiff suffered actual harm as a result of Defendant's infringement.

62. As a direct and proximate result of Defendant's past infringement of the '444 Patent, Plaintiff suffered monetary and other damages for which it seeks compensation. Defendant's infringement of the '444 Patent during its term caused Plaintiff harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented inventions, as well as lost sales and loss of repeat sales stemming from the infringing acts.

63. Defendant's infringement during the term of the '444 Patent was willful. As alleged above, Defendant knew of the '444 Patent, or deliberately avoided learning of it, no later than its issuance on November 28, 2023, yet Defendant continued to manufacture, import, and sell the Accused Products thereafter. Defendant's continued infringement with knowledge of the '444 Patent demonstrates egregious misconduct warranting enhanced damages. Defendant knew or should have known that its actions constituted infringement of a valid patent, and its failure to cease the infringing activities after acquiring that knowledge establishes willful infringement. Accordingly, Plaintiff is entitled to treble damages under 35 U.S.C. § 284, and this is an exceptional case under 35 U.S.C. § 285.

64. Plaintiff marked its Sheer White!® Whitening Strips with the '444 Patent as alleged above. To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been satisfied with respect to the '444 Patent.

65. Plaintiff is entitled to recover damages adequate to compensate for the past infringement, pursuant to 35 U.S.C. § 284, in no event less than a reasonable royalty.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. That judgment be entered against Defendant finding that it infringed upon Plaintiff's Patent during its term;

B. That judgment be entered against Defendant finding that its infringement of Plaintiff's Patent was willful;

C. That Plaintiff be awarded damages for such past infringement in an amount to be proven at trial, in no event less than a reasonable royalty pursuant to 35 U.S.C. § 284, together with prejudgment and post-judgment interest and costs;

D. That Plaintiff be awarded treble damages under 35 U.S.C. § 284 for Defendant's willful infringement of Plaintiff's Patent;

E. A finding that this case is exceptional under 35 U.S.C. § 285;

F. That Plaintiff be awarded its reasonable attorneys' fees and costs; and

G. Any and all other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 25, 2026

Respectfully submitted,

By: /s/ Nicholas S. Lee
Nicholas S. Lee, Esq.
Law Office of Nicholas S. Lee
332 S. Michigan Ave., Suite 900
Chicago, Illinois 60604
Tel.: 224-360-3293
nslee@nslegal-ip.com

*Attorney for Plaintiff CAO Group, Inc.*